**UNITED STATES of America,
Appellee,**

v.

**Richard F. FINCKE and Albert A. Prata,
Defendants-Appellants.**

**Nos. 195, 196, Dockets 34936, 34937.**

United States Court of Appeals,
Second Circuit.

Argued Oct. 22, 1970.

Decided Feb. 1, 1971.

Henry Putzel, III, Asst. U. S. Atty., New York City (Jay S. Horowitz, Ross Sandler, Asst. U. S. Attys., and Whitney North Seymour, Jr., U. S. Atty., S.D.N. Y., New York City, on the brief), for appellee.

Thomas Day Edwards, New York City, for defendants-appellants.

Before MEDINA, WATERMAN and FEINBERG, Circuit Judges.

MEDINA, Circuit Judge:

The widespread use of credit cards throughout the country seems to be one of the characteristic features of the American scene of today. And these credit cards have spawned a proliferation of old and new frauds and swindles. In this case credit cards used in connection with the placing of telephone calls ran up a bill of $148,803.43.

The indictment charges appellants Richard F. Fincke and Albert A. Prata with devising a scheme to defraud the New York Telephone Company by using the credit cards issued to the two appellants, as executives of Trans American Industries, Incorporated, without any intention of paying the charges. Robert G. McCullough, the District Manager in charge of the Broad Street office of the Telephone Company, is alleged to have participated in the scheme to defraud. All three are also charged with conspiracy. The evidence supporting the verdict against appellants both on the eleven substantive counts and also on the conspiracy charge is abundant and convincing.[1] There would be no occasion for discussion and there probably would have been no appeal but for the fact that the trial judge, after reserving decision at the close of the evidence on McCullough's motion for a directed judgment of acquittal, seems to have thought it would be a good idea to listen to the summations before making up his mind whether or not to exonerate McCullough. After the summations the jury was dismissed for the day and, at a conference in the robing room, the trial judge announced that he granted McCullough's motion for acquittal on the ground that the evidence was insufficient to support a finding beyond a reasonable doubt of intent to defraud. In substance the ruling was that the rather considerable amount of misrepresentations, destruction and alteration of records and so on by McCullough was to protect his job and not to defraud the Telephone Company. This was very likely true, as there is no proof that McCullough was paid anything by Fincke and Prata. Indeed, the only way they seem to have paid anyone was by farming out their credit cards, which is euphemistically referred to as "authorizing" the use of the cards by various persons. But the ruling acquitting McCullough is not before us.

I.

*The Acquittal of McCullough After the Summations and Before Instructing the Jury.*

Counsel for appellants vigorously protested and promptly moved for a mis-

---

1. Fincke received a suspended prison sentence of one year, was placed on two years' probation, and fined $7,500. Prata received a sentence of two years' probation, with the imposition of prison sentence suspended, and a fine of $2,500.

trial. After considerable discussion this motion was renewed and later was denied. Incidentally, despite the prolonged debate of various points raised by counsel for appellants, the motion for a mistrial is the only motion made by him and it presents the only clear question of law now before us. All the rest of counsel's protest resolves itself into a variety of miscellaneous arguments, none of which matured into rulings on motions or the denial of any request for instructions to the jury, but which do have a bearing on the question of whether or not the denial of the motion for a mistrial constituted an abuse of judicial discretion. We shall come back to this later.

It is well to bear in mind that the summations were concluded in the late afternoon of February 19, 1970 and, immediately after the jury had been excused for the day, the trial judge announced the granting of McCullough's motion for acquittal. After the protest of counsel for Fincke and Prata and his motion for a mistrial, there was considerable discussion. The last thing Judge Lasker did before the overnight recess was to make the following comment to counsel for Fincke and Prata:

> You can review your notes tonight and if tomorrow morning you wish me to give any special instruction that is caused by the turn events has [sic] taken, I will certainly consider it and probably grant it  *  *  *.

There was further prolonged discussion the following morning, not in the presence of the jury. The upshot was that, having had ample time to consider the terms of a formal motion to strike parts of McCullough's testimony or submit a series of clear and precise requests for instructions, counsel for appellants produced nothing but a few additional arguments and protests. Later he did submit orally two or three requests, all of which were granted, including the request that the trial judge inform the jury of the fact that McCullough had not pleaded guilty.

We think the best way to clarify the whole situation is to review the various contentions of counsel for appellants made in the robing room out of the hearing of the jurors, with our comments.

█ The trial judge was adamant in his refusal to tell the jury that he had acquitted McCullough and that he had done this on the ground of lack of criminal intent. Indeed, he gave the most positive direction that the acquittal of McCullough be kept secret, and all agreed. The ruling was that he would tell the jury that McCullough was no longer in the case, that the scheme to defraud and the conspiracy charges no longer concerned McCullough but only Fincke and Prata. We think the trial judge ruled correctly. The disposition of McCullough's case had no legal bearing on the question of the guilt or innocence of Fincke and Prata. To have made a full explanation of just what had occurred would have gravely prejudiced the Government's position and it is far from clear that such an explanation would not have hurt Fincke and Prata more than it helped them.

█ On the other hand, this alteration of the whole complexion of the case after rather than before the summations presented problems. For the theory generally applicable to trials, civil as well as criminal, especially since the adoption of the Federal Rules of Civil and Criminal Procedure, is to let counsel know in advance of the summations the rulings to be made in the instructions to the jury. Wright v. United States, 339 F.2d 578 (9th Cir. 1964); Downie v. Powers, 193 F.2d 760 (10th Cir. 1951); Ross v. United States, 180 F.2d 160 (6th Cir. 1950), cert. denied, 344 U.S. 832, 73 S.Ct. 40, 97 L.Ed. 648 (1952). This is generally accomplished by colloquy or by rulings on requests for instructions, prior to the summations.

Judge Lasker suggested that counsel for Fincke and Prata make an additional summation. This suggestion was wisely rejected, we think, for a variety of reasons.

There was extensive discussion between the court and counsel relative to the proofs of what McCullough had done, including his various misrepresentations, destruction and alteration of records. Here the views of the trial judge and Government counsel as well were clear and explicit, and we agree with them. This evidence was properly in the case and was admissible against Fincke and Prata, even if McCullough had no intent to defraud, as the jury could find that McCullough was an innocent agent of Fincke and Prata in carrying out their fraudulent scheme. If McCullough had testified as a Government witness, his testimony would have been relevant and admissible.

18 U.S.C. Section 2 (1964), specifically referred to in the indictment, provides:

*Principals.*

(a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

(b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

Thus the case had a certain ambivalence from the beginning. In other words, as recognized by the able and experienced trial counsel for appellants in his summation prior to the exoneration of McCullough, and as commented upon by the trial judge several times during the trial, the Government had "to take both positions" as against Fincke and Prata, i. e., (1) that McCullough as a participant in the scheme to defraud aided and abetted Fincke and Prata by giving them further and further opportunities to use their respective credit cards, or (2) that McCullough was the innocent victim of Fincke and Prata who willfully caused him to do what he did. While these theories were not spelled out in detail in the instructions to the jury, both sub-sections of 18 U.S. C. Section 2 were read to the jury in full.

From any standpoint it is clear to us that McCullough's testimony in its entirety was properly received in the first place, as relevant to issues affecting all parties to the case, and this same testimony was properly permitted to remain in the case after the exoneration of McCullough. To bring the detail into focus, it must be understood that there were two features of McCullough's testimony: (1) his admitted lying to his superiors and his alteration and destruction of records, and (2) by far the greater part that related to the many long conversations with Fincke and Prata at which they produced piles of documents and badgered and beguiled McCullough into permitting the continued use of the credit cards. Of course, either before or after McCullough's exoneration, the last thing in the world counsel for Fincke and Prata wanted to do was, in the presence of the jury or otherwise, to emphasize the predominant feature of McCullough's testimony, which was most damaging to Fincke and Prata. Instead, stating that he could not "pinpoint" the specific portions of McCullough's testimony that he wanted the judge to strike from the record, counsel indicated that he thought McCullough's confession of his wrongdoing would be very prejudicial to Fincke and Prata if left in the case after McCullough's acquittal.

But, viewed in its relationship to the issues both before and after McCullough's acquittal, and viewed in the light of the various views that might be entertained by the jury on questions of credibility, we think the testimony of McCullough in its entirety was properly left in the case. This testimony in its entirety was, before the acquittal, relevant: (a) to McCullough's defense to the effect that he was an innocent victim of Fincke and Prata and not a willful participant in any scheme to de-

fraud; (b) to the Government's claim that, taking McCullough's testimony as a whole, his conduct was so bad that he must have been getting something on the side and that he was guilty; (c) that, in any event, the way Fincke and Prata pursued McCullough, misrepresenting a variety of deals big and small for five long years and more showed what slick operators they were and proved their guilt, especially as they must or should reasonably have known that McCullough was getting desperate and might well have to cover up his permission to them to continue to use the credit cards by lying to his superiors and by altering or destroying records; and (d) to the claim by Fincke and Prata that they persuaded McCullough not through guile but because they really did have some deals on the fire.

After the acquittal (a) and (b) were out, as McCullough was no longer in the case; (c) and (d) remained. The misconduct of McCullough was part of the general picture. In any event, if counsel for Fincke and Prata desired to move to strike a particular part of McCullough's testimony, he was required to "pinpoint" that particular part so that the judge might intelligently rule on the motion. Moreover, the overnight recess gave counsel plenty of time to prepare a formal motion which he never did.

There was no amendment of the indictment by the trial judge nor could his instructions to the jury be fairly construed as permitting an inference of fraudulent aiding and abetting on the part of McCullough.

So, we come at last to the only real point in the case. Should the motion for a mistrial have been granted as a matter of law? And, if not, was it an abuse of discretion to deny the motion?

2. Rule 29. *Motion for Judgment of Acquittal.*
   (b) *Reservation of Decision on Motion.* If a motion for judgment of acquittal is made at the close of all the evidence, the court may reserve decision

## II.

### *The Motion for a Mistrial Was Properly Denied.*

#### A.

Appellants argue that there was a *per se* violation of Fed.R.Cr.P.Rule 29(b) [2] and that a trial judge, having reserved decision on a motion for acquittal, must grant the motion before the summations or wait until after the jury has rendered its verdict or has disagreed. While the Rule is ambiguous, we think the phrase "submit the case to the jury and decide the motion either before the jury returns a verdict or after it returns a verdict of guilty or is discharged without having returned a verdict" is susceptible of the meaning that, in the event that the case is submitted to the jury, the trial judge may decide the motion at any time before or after the jury returns a verdict or after the jury has been discharged for failure to agree upon a verdict. After the summations and before the instructions to the jury was "at any time before the jury returns a verdict." This reading gives the trial judge ample power to grant a reserved motion for the acquittal of a defendant in a criminal case at such time, before or after the submission of the case to the jury, as the endless variables in the circumstances of particular cases make it, in the judgment of the trial judge, desirable to do so in the interest of justice. Moreover, Fincke and Prata would have been in the same position if, after instructing the jury, but before the jury had rendered a verdict, the trial judge had granted the motion to acquit McCullough.

The extensive powers of the trial judge in the federal judicial system form one of the most distinctive and significant features of that system. The federal trial judge is the most important

on the motion, submit the case to the jury and decide the motion either before the jury returns a verdict or after it returns a verdict of guilty or is discharged without having returned a verdict.

single individual in the whole hierarchy. His powers are considerably more extensive than those of most if not all state trial judges. One of the great purposes of the Federal Rules, both Civil and Criminal, is to keep these powers intact and to afford the general flexibility necessary to attain justice, to the end that such powers may be exercised fearlessly, conscientiously and impartially.[3] It is our function in the Courts of Appeals to see to it that these powers are not abused.

Thus, while we do not suggest that the course followed by the district judge here is a desirable one, we do hold that he had the power to grant the motion for the acquittal of McCullough after the summations and before giving his instructions to the jury. We now address ourselves to the wholly different question, whether this action was an abuse of discretion because it was prejudicial to the rights of appellants.

### B.

█ This is no complicated conspiracy case such as we often have to deal with. The records of the Telephone Company disclose the thousands of telephone calls stemming in many widely separated parts of the United States from the use of the credit cards issued to Fincke and Prata. While they may have expected in 1962 or thereabouts to construct some buildings in Puerto Rico or Panama, their financial plight after the building where they had their office on Broad Street, New York City, was torn down, was not such as to inspire confidence. McCullough testified they did not even have a telephone instrument in their small new office. They had no money, they had no property, creditors other than the Telephone Company sued them and the Sheriff appeared to clean them out. But they did

have the credit cards; and, as the bills piled up at the rate of $2,000 or $3,000 a month, the only way Fincke and Prata could keep going was to persuade McCullough to let them continue to use the credit cards. And this they were able to do until, in April, 1967, McCullough's superiors discharged McCullough and informed Fincke and Prata that the cards were cancelled and that any further use of the cards would be fraudulent. Even this did not deter Fincke and Prata from further use of the credit cards to the extent of an additional several thousand dollars of indebtedness. In the application to the Telephone Company Trans American Industries, Incorporated was represented as a prosperous company with an account "in high 6 figures" in the Irving Trust Company and 33 acres of land in Montreal "to be used for Expo '67" and so forth. In fact they never had an account of any kind in the Irving Trust Company and nothing further was heard of the land in Montreal. When the able prosecutor referred in his summation to Fincke and Prata as "a pair of confidence men" the trial judge ruled that this was "a fair commentary," and we agree.

Neither Fincke nor Prata testified in his own defense and the trial judge, at the request of their counsel, admonished the jury that they had an absolute right to abstain from testifying and that the jury was not "to give any weight or consideration to the fact that the defendants have not testified."

We think the conscientious scruples entertained by Judge Lasker had to do with the possibility that the jury might convict McCullough despite the lack of any proof that he derived any benefit whatever from his extensions of time to Fincke and Prata. It would have been easy to let the case go to the jury as against all three defendants and await the outcome. If the jury convicted Mc-

---

3. See Selected Writings of Arthur T. Vanderbilt, edited by Fannie J. Klein and Joel S. Lee, The Institute of Judicial Administration, Inc. (1967), "The Attributes and the Selection of Judges," Vol. 2, p. 111 ff.

**862**

Cullough, Judge Lasker could still set the verdict aside and acquit McCullough. But perhaps the thought occurred to Judge Lasker that nothing he could do would remove the stain of the conviction. Perhaps he thought McCullough had suffered enough. So he waited to hear the summations.

How different would or could have been the summation of counsel for Fincke and Prata if the trial judge had granted the motion to acquit McCullough before the summations? He certainly would have been under no obligation, legal or otherwise, to explain to the jury his reasons for acquitting McCullough. Except for the elimination of McCullough as a defendant and alleged co-conspirator, the case would have remained just as it had been.

We have studied with care all the summations and we cannot find any substantial basis for concluding that the summation of counsel for Fincke and Prata would or could have been substantially different from the summation as made before the acquittal of McCullough.

Accordingly, taking into consideration the case as a whole, we find it was not an abuse of judicial discretion to deny the motion for a mistrial.

This, however, is not to be taken as a blanket approval of any practice of withholding decision on a motion to acquit one of several defendants charged with fraud and conspiracy until after the summations by counsel for each of the defendants and then granting the motion for acquittal before instructing the jury. Generally—indeed almost always—it will be better for the judge not to adopt the procedure followed in this case.

We have considered all the various miscellaneous contentions of counsel for appellants. We think there is no occasion for further comment as we find no merit in any of them.

Affirmed.